IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Donald Lee Robinson, #291169, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:09-1346-HFF-JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Robert M. Stevenson, III, | ) | |
| Warden Broad River Correctional | ) | |
| Institution, | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Donald Lee Robinson, ("Robinson"), is an inmate at the South Carolina Department of Corrections serving a sentence of twenty five (25) years imprisonment for distribution of crack cocaine and fifteen (15) years (concurrent) for conspiracy to distribute crack cocaine. Robinson filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on May 28, 2009. Respondent filed a return and motion for summary judgment on July 27, 2009. Because Robinson is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on July 28, 2009 advising him of his responsibility to respond to the motion for summary judgment. Robinson filed his response to the motion on November 10, 2009.

**Background and Procedural History**

Special Agent Dexter McGee ("S/A McGee") of the South Carolina Law Enforcement

Division ("SLED"), with the assistance of a confidential informant ("CI"), made a purchase of crack cocaine from Robinson in Marion County on August 23, 2000. The controlled purchase was captured on audio and video. Surveillance was conducted by other SLED agents and officers of the Marion County Combined Drug Unit. As soon as the transaction was completed, the officers returned to the drug unit and reviewed the audio and video recordings. Robinson was identified from the recordings by S/A McGee, Lt. David Rouse of the Mullins Police Department (App. 71), and Lt. Hayvern Hendley of the Marion Police Department. (App. 100-101). Arrest warrants were issued but Robinson was not immediately arrested.

Robinson was indicted in August of 2002. (App. 353).[1] He proceeded to trial beginning February 25, 2003. Robinson was represented at trial by William S. Derrick, Esquire.

S/A McGee testified that he and the CI drove to the area where the transaction occurred in a vehicle equipped with video on each side of the vehicle as well as audio. The tapes were played for the jury. According to S/A McGee, he asked Robinson for the drugs, who in turn obtained them from a co-conspirator known as K.K., later identified as Kevin Genwright. Robinson turned the drugs over to McGee who gave him $60. Robinson obtained $10 in change from K.K., which he gave to McGee. (App. 106-128). Lt. Rouse and Lt. Hendley also testified that it was Robinson on the audio and video tapes. The jury returned verdicts of guilty.

An Anders[2] brief was filed on Robinson's behalf by the South Carolina Office of Appellate Defense raising the following issue:

---

[1] Robinson was also indicted for a distribution charge alleged to have occurred on October 7, 1999.

[2] Anders v. California, 386 U.S. 738 (1967).

2

> Whether the circuit court lacked jurisdiction to try appellant for distribution of crack cocaine where the indictment failed to allege he distributed the drugs knowingly, thus failing to allege all the elements of the offense?

There is no indication that Robinson filed a *pro se* brief. The convictions were affirmed by the South Carolina Court of Appeals. *See* <u>State v. Robinson</u>, Unpub.Op.No. 2005-UP-421 (S.C.Ct.App., filed June 27, 2005).

Robinson filed an application for post-conviction relief ("PCR") on July 29, 2005. (App. 219). An evidentiary hearing was held on October 2, 2006. (App. 282). Robinson was represented by Charles T. Brooks, III, Esquire. Robinson, Genwright and trial counsel testified. An Order Denying Post-Conviction Relief was filed on May 18, 2007. (App. 343). A petition for writ of certiorari was filed in the South Carolina Supreme Court through the South Carolina Commission on Indigent Defense raising the following issue:

> Did the PCR court err by failing to find trial counsel ineffective for not objecting to the hearsay testimony of the agent regarding the identification of Petitioner by the confidential informant who did not testify?

The petition for writ of certiorari was denied on November 19, 2008.

### Grounds for Relief

Robinson states four grounds for relief in paragraph 12 of the present petition:

**Ground One:** Ineffective assistance of counsel.

**Ground Two:** Conflict of interest.

**Ground Three:** Hearsay testimony violation.

**Ground Four:** Confrontation clause violation.

Additionally, in the following paragraph, which provides a space to explain why any of the grounds in paragraph 12 were not previously presented in state court, Robinson states:

3

Preliminary hearing violation, why this were not raised because I never had a preliminary hearing at circuit court state, and the defective indictment, multiplicity indictment violation, conspiracy.

Further, attached to the petition is a twenty-seven page discussion of Robinson's grounds for relief.

In a fifty-nine page memorandum in support of the motion for summary judgment, Respondent discerns and discusses nine grounds for relief as follows:

1. Ineffective assistance of trial counsel:

   a. Failed to object to the continuation of the trial that forced counsel to entertain a conflict of interest.

   b. Failed to "admonish" the court of this multiple representation of the Applicant and his alleged co-defendant.

   c. Failed to object to hearsay testimony of Dexter McGee regarding statements made by the confidential informant resulting in the denial of the Applicant's confrontation rights and impermissibly bolstering of the State's case.

   d. Referred to the prejudicial hearsay testimony during his closing argument.

   e. Failed to object to the prosecutor's closing argument regarding the confidential informant.

   f. Failed to object to the trial court's jury instructions which constructively amended the indictment.

   g. Failed to object to the trial court's jury instructions which effectively shifted the burden of proof to the defense.

   h. Told the jury they could find the Applicant guilty of conspiracy, and

   i. Failed to object to the court's sentence that was contrary to legislative intent.

4

2. Trial counsel had a conflict of interest because he previously represented Genwright in the same case.

3. Hearsay testimony involving the testimony of S/A McGee.

4. Confrontation clause violation involving the same hearsay testimony offered by S/A McGee.

5. Lack of subject matter jurisdiction of distribution of crack cocaine indictment.

6. Ineffective assistance of counsel for failing to request a preliminary hearing.

7. Ineffective assistance of counsel because his attorney did not establish that Genwright had not pled guilty to conspiracy.

8. Ineffective assistance of counsel for failing to argue insufficiency of evidence on the conspiracy charge.

9. Trial counsel's conduct caused a breakdown in the adversarial system of justice and that this court should analyze his allegations under United States v. Cronic, 466 U.S. 648 (1984).[3]

Robinson did not object to Respondent's statement of his grounds for relief in his Roseboro response.

**Discussion**

Since Robinson filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

---

[3] In Chronic, the Supreme Court held that, in the circumstances of that case, ineffective assistance of counsel could be inferred warranting a reversal on direct appeal.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

### 1. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

   1.   **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction,

it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. *See* O'Sullivan v. Boerckel, 526 U.S. 838 (1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only

8

those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[4] Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2. Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

9

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4. Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty

11

of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.), *cert. denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and

prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

Robinson has presented only two claims for review to the South Carolina Appellate Courts. On direct appeal Robinson argued that, as a matter of state law, the trial court lacked jurisdiction based on an alleged defect in the indictment. In his petition for writ of certiorari following denial of his PCR, Robinson argued that his trial counsel was ineffective for failing to object to hearsay testimony of S/A McGee regarding the identification of Robinson by the CI who did not testify. Respondent argues that all other grounds have been defaulted and are procedurally barred.

Robinson argues that he is "actually innocent" of the charges of which he was convicted. However, he has not produced new evidence which was unavailable at trial to establish his factual innocense. He also argues that the defaulted claims were not presented to the South Carolina appellate courts because his attorneys were ineffective. A criminal defendant is entitled to effective assistance of counsel on direct appeal. Pennsylvania v. Finley, 481 U.S. 551 (1987). However, he must raise the claim of ineffective assistance of appellate counsel in his PCR, obtain a ruling on the issue from the PCR court, and raise the issue in his petition for writ of certiorari. Robinson has not done so. On the other hand, the Sixth Amendment does not create a right to counsel in a state PCR or in an appeal from the denial of the state PCR. Thus, ineffective assistance of PCR counsel or PCR appellate counsel cannot constitute cause for default. Coleman v. Thompson, 401 U.S. 722 (1991).

Therefore, the undersigned will limit discussion in this Report and Recommendation to the grounds actually presented to the South Carolina appellate courts and the standard set forth in 28 U.S.C. § 2254(d).

### 2. Subject Matter Jurisdiction

Robinson argues that the trial court lacked subject matter jurisdiction because the indictment failed to allege that he "knowingly" distributed the crack cocaine, an essential element of the offense. This argument was rejected by the South Carolina Court of Appeals on direct appeal.

The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in ...criminal cases"). Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court." In other words, it is up to

South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists. This court does not review determinations of state law made by South Carolina courts. *See* Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

### 3. Ineffective Assistance of Trial Counsel

In his petition for writ of certiorari, Robinson argued that his trial attorney was ineffective for not objecting to hearsay testimony offered by S/A McGee.

The following colloquy took place at the beginning of the cross-examination of S/A McGee by Mr. Derrick, Robinson's trial counsel:

**Question:** Mr. McGee, prior to August the 23rd 2000, did you know Donald Robinson?

**Answer:** No, sir, I didn't.

**Question:** Did you seen him before?

**Answer:** No, sir, I can't say that I did.

**Question:** How did you now the name - - how did you come about the name?

**Answer:** At the first time I heard the name was when the confidential informant said it in the vehicle.

**Question:** The confidential informant gave you the name?

**Answer:** The confidential informant gave me the name and also yelled out to the subject who answered to it.

**Question:** Now, you mentioned that when you arrived at the scene the C.I. mentioned the name of Donald Robinson; right?

**Answer:** That's correct.

**Question:** And he came to the car; right?

15

**Answer:** That's correct.

(App. 121).

Mr. Derrick did not object to S/A McGee's response that the CI identified Robinson at the scene.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the

16

>particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

There is a "strong presumption" that trial counsel's "conduct falls within the wide range of reasonable professional assistance." <u>Strickland v. Washington</u>, 466 U.S. at 689. Inadequate cross-examination will rarely be the basis for a finding of ineffective assistance of counsel. Courts recognize that "most attorneys make some mistakes during cross-examination." <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1333, n.4 (4th Cir. 1995), *cert. denied*, 516 U.S. 1054 (1996). In <u>Hunt</u>, the prisoner presented experts at his PCR hearing to criticize trial counsel's cross-examination. The Fourth Circuit accepted the PCR court's finding that the experts' criticisms "constitute a grading of the quality of counsel's cross-examination. None of the suggested errors or omissions are of such a magnitude as to place the conduct outside of prevailing professional norms." *Id*.

The PCR court found that even if counsel's failure to object to the testimony was error, Robinson failed to show prejudice because the testimony was cumulative. The PCR court noted that S/A McGee, as well as Lts. Rouse and Hendley, identified Robinson at trial. Further, there was a

video of the transaction.

Robinson has not shown that the PCR court's analysis was contrary to or an unreasonable application of the Strickland standard.

## **Conclusion**

Based on a review of the record, it is recommended that Respondent be granted summary judgment and the petition be dismissed without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

January 13, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).